UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLINA HEALTH SYSTEM, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> XAVIER BECERRA, <br><br> *Defendant*. | Civil Action No. 23-2144 (LLA) |

## MEMORANDUM OPINION

Plaintiffs, thirty hospitals[1] (the "Hospitals"), bring this suit against Xavier Becerra in his official capacity as Secretary of Health and Human Services ("HHS") to challenge the agency's calculation of a reimbursement formula for certain hospitals serving a large proportion of low-income patients. The present suit joins a long line of cases related to this reimbursement formula.

---

[1] Plaintiffs are: Allina Health System d/b/a Abbott Northwestern Hospital; Allina Health System d/b/a Cambridge Medical Center; Allina Health System d/b/a Owatonna Hospital, Provider; Allina Health System d/b/a United Hospital; Allina Health System d/b/a Unity Hospital; Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital; Henry Ford Health System d/b/a Henry Ford Hospital; Henry Ford Health System f/d/b/a Henry Ford Macomb Hospital – Warren Campus; Highland Hospital of Rochester, Provider; Kaleida Health; Kingsbrook Jewish Medical Center; Long Island Jewish Medical Center; Long Island Jewish Medical Center f/d/b/a Forest Hills Hospital; Long Island Jewish Medical Center f/d/b/a Franklin Hospital; Maimonides Medical Center; Methodist Hospitals of Dallas d/b/a Methodist Charlton Medical Center; Methodist Hospitals of Dallas d/b/a Methodist Dallas Medical Center; Montefiore Medical Center; Mount Sinai Medical Center of Florida, Inc.; New York-Presbyterian/Queens; North Carolina Baptist Hospital; North Shore University Hospital; NYU Langone Hospitals, successor in interest to Lutheran Medical Center; Shands Jacksonville Medical Center, Inc. d/b/a UF Health Jacksonville; Shands Teaching Hospital and Clinics, Inc. d/b/a UF Health Shands Hospital; South Shore University Hospital f/d/b/a Southside Hospital; Staten Island University Hospital; The New York and Presbyterian Hospital; The New York and Presbyterian Hospital f/k/a New York-Presbyterian/Brooklyn Methodist; and The University of Rochester d/b/a Strong Memorial Hospital.

Pending before the court are the Secretary's motion to dismiss for lack of jurisdiction, ECF No. 15, the Hospitals' motion to compel production of the administrative record, ECF No. 12, and the Hospitals' motion to stay this case pending resolution of a later-filed case, *Montefiore Medical Center v. Becerra*, No. 24-CV-1810 (D.D.C. filed June 24, 2024), ECF No. 20.  All three motions are fully briefed.  *See* ECF Nos. 12-15, 17, 19, 20-22.

For the reasons discussed below, the court will deny the Hospitals' motion to stay, grant the Secretary's motion to dismiss, and deny the Hospitals' motion to compel the administrative record as moot.

## I. Background

Through the Medicare program, the federal government provides health insurance for the elderly and disabled.  *See generally* Social Security Amendments of 1965, Pub. L. No. 89-97, § 102, 89 Stat. 286, 91, 332 (codified as amended at 42 U.S.C. § 1395 *et seq.*).  Two "parts" of the program are relevant here: Part A, through which the government makes direct payments to hospitals for services provided to Medicare beneficiaries, *see id.* §§ 1395c to 1395i-5; and Part C, through which "beneficiaries may choose to have the government pay their private insurance premiums rather than pay for their hospital care directly." *Azar v. Allina Health Servs.*, 587 U.S. 566, 570 (2019); *see* 42 U.S.C. §§ 1395w-21 to 1395w-29.  Individuals who turn sixty-five and are entitled to Social Security benefits under 42 U.S.C. § 402 are automatically entitled to Part A benefits.  *See* 42 U.S.C. § 426(a).  A beneficiary can instead elect to enroll in a Part C plan.  *Id.* § 1395w-21(a)(1).

HHS, which administers Medicare, reimburses healthcare service providers for services rendered under Part A.  *See id.* § 1395h; *Allina Health Servs.*, 587 U.S. at 570.  "Hospitals receive reimbursement based on prospectively determined national and regional rates, not on the actual

amount they spend, and they also receive payment adjustments for some hospital-specific factors." *Cath. Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013). One such adjustment increases the rate of reimbursement for hospitals that treat a disproportionately high number of low-income patients. *Id.* This adjustment, known as the disproportionate share hospital adjustment ("DSH adjustment") is "based on Congress's judgment that low-income patients are often in poorer health, and therefore costlier for hospitals to treat." *Id.*

The DSH adjustment is "calculated in part using a hospital's so-called 'Medicare fraction,' which asks how much of the care the hospital provided to Medicare patients in a given year was provided to low-income Medicare patients." *Allina Health Servs.*, 587 U.S. at 570 (emphasis omitted). "The fraction's denominator is the time the hospital spent caring for patients who were 'entitled to benefits under' Medicare Part A. The numerator is the time the hospital spent caring for Part-A-entitled patients who were *also* entitled to income support payments under the Social Security Act." *Id.* (quoting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)). Critically, "[t]he bigger the fraction, the bigger the payment" to the hospital. *Id.*

The meaning of the phrase "entitled to benefits" under Part A has been the subject of much litigation. The key disagreement is whether the phrase should be read to include only those enrolled in Part A or to additionally include individuals who were eligible for benefits under Part A but elected to enroll in Part C. "Part C enrollees . . . tend to be wealthier than patients who opt for traditional Part A coverage," *Allina Health Servs.*, 587 U.S. at 571, which means that they are less likely to receive income support payments under the Social Security Act. If Part C beneficiaries are included in the Medicare fraction, they have a larger impact on the denominator than the numerator, resulting in a significantly smaller fraction and lower reimbursement rates. *See Price*,

863 F.3d at 939. "Nationwide, the practical consequences of this dispute number in the hundreds of millions of dollars." *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 5 (D.C. Cir. 2011).

The Centers for Medicare and Medicaid Services ("CMS") is the component of HHS responsible for the day-to-day operation and administration of the Medicare program. *See* 42 U.S.C. § 1395kk; *Saint Francis Ctr. v. Azar*, 894 F.3d 290, 291-92 (D.C. Cir. 2018). CMS annually calculates the Medicare Fraction for each potentially DSH-eligible hospital and posts this information on its website. *See* 42 C.F.R. § 412.106(b)(2). The Medicare Administrative Contractor ("MAC"), who is designated by the agency, determines the total amount of reimbursement due to the provider and issues a year-end payment determination, called a Notice of Program Reimbursement ("NPR"). *Id.* §§ 421.400 to 421.401; 405.1803. Providers may appeal the MAC's determination to the Provider Reimbursement Review Board, which will then hold a hearing and render a decision. 42 U.S.C. § 1395oo. A hospital may seek judicial review of "any final decision of the Board" by filing suit in federal district court within sixty days of the Board's determination. *Id.* § 1395oo(f)(1). In certain conditions, a hospital may also seek judicial review if the Board determines that it lacks authority to decide a "question of law or regulations relevant to the matters in controversy." *Id.*

### A. *Allina* Litigation

"Before 2004, HHS [did] not treat Part C enrollees as 'entitled to benefits under Part A.'" *Price*, 863 F.3d at 939 (emphasis omitted); *see Ne. Hosp. Corp.*, 657 F.3d at 15. In 2003, the agency proposed codifying that practice in a formal rule. Medicare Program; Proposed Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 27,208 (May 19, 2003). After the notice-and-comment period, HHS reversed course and issued a final rule (the "2004 Rule") announcing that it would treat Part C enrollees as "entitled to benefits under Part A." Medicare Program; Changes to the Hospital Inpatient Prospective Payment

Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 490-99 (Aug. 11, 2004).  HHS intended to apply its new interpretation to all Medicare fraction calculations beginning in Fiscal Year 2005.  *Id.*

### 1. *Allina I*

In 2010, the Hospitals filed their first suit challenging the validity of the 2004 Rule and claiming that it resulted in improperly low DSH adjustments for Fiscal Year 2007.  *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1105, 1107 (D.C. Cir. 2014) ("*Allina I*").  The district court vacated the rule, and the D.C. Circuit affirmed, concluding that the 2004 Rule was not a "logical outgrowth" of the proposed rule and thus violated the Medicare statute's notice-and-comment requirements.  *Id.* at 1109.[2]

### 2. *Allina II*

In 2013, in response to *Allina I*, HHS issued a new rule prospectively readopting the policy of treating Part C enrollees as "entitled to benefits under Part A" (the "2013 Rule").  *See* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Payment System and Fiscal Year 2014 Rates; Quality Reporting Requirements for Specific Providers; Hospital Conditions of Participation; Payment Policies Related to Patient Status, 78 Fed. Reg. 50,614 (Aug. 19, 2013).  In 2014, CMS posted the Medicare fractions for Fiscal Year 2012 on its website and noted that the calculations included Part C patients.  *Azar v. Allina Health Servs.*, 587 U.S. 566, 571 (2019) ("*Allina II*").  Some of the *Allina I* plaintiffs challenged the practice because the 2004 Rule had been vacated and the 2013 Rule was intended to only be prospective.  *See id.*  Ultimately, the Supreme Court held that the published fractions amounted to a "statement of policy" that was subject to the Medicare statute's

---

[2] The D.C. Circuit did not decide whether HHS had to recalculate the hospitals' reimbursements under the pre-2004 practice, noting that this would be an issue on remand to the agency.  *Allina Health Servs.*, 746 F.3d at 1111.

notice-and-comment requirements and that HHS had not identified a lawful excuse for neglecting its notice-and-comment obligations. *Id.* at 572, 584. Consequently, HHS could not rely on the published fractions.

### 3.     *Allina III*

In 2015, while *Allina II* was pending, HHS issued a notice that the Administrator of CMS would be putting forth a determination on the interpretation of the statutory phrase "entitled to benefits under Part A" as it related to the DSH adjustment. ECF No. 11 ¶ 54 (citing Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. B, *Allina Health Sys. v. Burwell*, No. 16-CV-150 (D.D.C. May 4, 2016) ("*Allina III*"), ECF No. 12-2). After receiving comments, HHS issued a final administrative decision concluding that the phrase "entitled to benefits under part A" was "ambiguous" and ruling that Part C enrollees were to be included in the Medicare fraction. *Id.* ¶ 56 (citing Def.'s Mot. to Dismiss, Ex. E at 46, *Allina III*, No. 16-CV-150 (D.D.C. Apr. 4, 2016), ECF No. 9-7). Several hospitals filed *Allina III* to challenge HHS's decision to adopt this interpretation through agency adjudication rather than rulemaking. *See* Compl., *Allina III*, No. 16-CV-150 (D.D.C. Jan. 29, 2016), ECF No. 1 ¶ 38. After the district court denied HHS's motion to dismiss, the parties agreed to stay the case until *Allina II* was resolved. Mem. Op., *Allina III*, No. 16-CV-150 (D.D.C. Aug. 4, 2017), ECF No. 16; Aug. 17, 2017 Min. Order, *Allina III*, No. 16-CV-150 (D.D.C. Aug. 17, 2017). Following the Supreme Court's decision in *Allina II*, the district court remanded *Allina III* to HHS. Order, *Allina III*, No. 16-CV-150 (D.D.C. Oct. 25, 2019), ECF No. 34.

### B.     Procedural History

After the remand in *Allina III*, HHS issued a notice of proposed rulemaking that would treat Part C enrollees as "entitled to benefits under [P]art A" in the Medicare fraction for the years before Fiscal Year 2014. *See* Medicare Program; Treatment of Medicare Part C Days in the

Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 85 Fed. Reg. 47,723, 47,725 (Aug. 6, 2020). After the notice-and-comment period, HHS published the final rule in June 2023 (the "2023 Rule"), with an effective date of August 8, 2023, adopting the proposed rule's interpretation that Part C beneficiaries are "entitled to benefits under Part A" for pre-2014 DSH adjustments. *See* Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. 37,772 (June 9, 2023).

On July 24, 2023—fifteen days before the 2023 Rule went into effect—the Hospitals filed this action challenging the 2023 Rule. ECF No. 1. In their amended complaint, the Hospitals ask the court to declare the 2023 Rule invalid. ECF No. 11 ¶ 106(a). They also ask the court to direct HHS to recalculate their DSH payments under the pre-2004 policy, which excludes Part C beneficiaries from the Medicare fraction, and award any additional amounts due with interest. *Id.* ¶ 106(b).

The Secretary moved to dismiss for lack of jurisdiction, ECF No. 15, and the Hospitals moved to compel production of the administrative record, ECF No. 12. After both matters were fully briefed, ECF Nos. 15, 17, 19 (motion to dismiss); ECF Nos. 12-14 (motion to compel), the Hospitals requested that this case be stayed pending resolution of a later-filed case, *Montefiore Medical Center v. Becerra*, No. 24-CV-1810 (D.D.C. filed June 24, 2020), ECF No. 20. The stay motion has been fully briefed. ECF Nos. 20-22.

## II.   Legal Standards

### A.   Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Th[e] power to issue a stay may be appropriately exercised where a separate proceeding bearing upon the case is

pending." *Hulley Enters. Ltd. v. Russian Federation*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016). A court may issue a stay without first deciding whether it has subject-matter jurisdiction. *Id.* at 277-80; *see Seneca Nation of Indians v. U.S. Dep't of Health and Human Servs.*, 144 F. Supp. 3d 115, 119 (D.D.C. 2015) (explaining that a "motion to stay, which does not ask the Court to declare the substantive law, presents a non-jurisdictional threshold ground for denying audience to a case on the merits). "The decision whether to stay . . . a case is a non-dispositive matter committed to the broad discretion of a district court." *Am. Ctr. for Civ. Just. v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011).

### B.     Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiffs, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### C.     Motion to Compel

The APA requires the court to "review the whole record" in making its decision.  5 U.S.C. § 706.  Thus, the court's review must "be based on the full administrative record that was before the [agency] at the time [it] made its decision."  *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  In APA cases, Local Civil Rule 7(n) provides, in relevant part, that "unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first."

## III.     Discussion

### A.     A Stay Is Not Warranted

The Hospitals ask that this case be stayed pending the later-filed *Montefiore* case, contending that both involve the validity of the 2023 Rule and a decision in *Montefiore* could resolve issues in this case.  ECF No. 20 ¶¶ 1-6.  The Secretary counters that there is a jurisdictional issue in this case that is not present in *Montefiore*, meaning that a merits ruling in *Montefiore* might have little impact on this case.  ECF No. 21 ¶ 4.

The court discerns no basis for a stay at this time.  Because the court must assure itself of subject-matter jurisdiction, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), it will need to decide the Secretary's motion to dismiss regardless of how *Montefiore* is resolved. There is thus no reason to delay consideration of that motion.  This is especially so because at least one other case, *Allina Health Services v. Becerra*, No. 23-5215 (D.C. Cir.), is currently being stayed pending resolution of the motion to dismiss in this case.

### B. The Court Lacks Subject-Matter Jurisdiction

The Secretary moves to dismiss for lack of subject-matter jurisdiction, arguing that the Hospitals have neither presented their challenge to the 2023 Rule to the Secretary nor exhausted the administrative process set forth in 42 U.S.C. § 1395oo(f)(1), which are prerequisites to bringing suit. ECF No. 15, at 13-19. The Hospitals maintain that the court has jurisdiction because they met these prerequisites before bringing earlier iterations of this case or, alternatively, because there is federal-question jurisdiction under *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). ECF No. 17, at 15-30. The court concludes that it lacks subject-matter jurisdiction and must dismiss the case.[3]

#### 1. The court lacks jurisdiction under the Medicare statute

Federal courts have limited jurisdiction over Medicare cases. As the D.C. Circuit has explained:

> Three statutes create the scheme for obtaining judicial review of Medicare claims. First, 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction "on any claim arising under" Title II of the Social Security Act, and it bars any "decision of the Commissioner of Social Security" from being judicially reviewed, "except as herein provided" in other Title II provisions. Second, 42 U.S.C. § 405(g) provides for judicial review of Social Security Act claims, thus creating the exception "herein provided." In pertinent part, it permits any person to file a civil action, "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party," to "obtain a review of such decision" in federal district court. Third, 42 U.S.C. § 1395ii states that certain provisions in § 405 and elsewhere in Title II "shall also apply with respect to" Title XVIII of the Social Security Act—*i.e.*, the Medicare Act—"to the same extent as they are applicable with respect to" Title II, with any reference to the "Commissioner of Social Security" considered as one to the Secretary of HHS. Although § 1395ii does not specifically enumerate § 405(g) as one of the incorporated Title II provisions, [Supreme Court] decisions

---

[3] Because the court will dismiss for lack of subject-matter jurisdiction, it will deny the Hospitals' motion to compel the administrative record, ECF No. 12, as moot.

> treat it as such, presumably on the theory that expressly incorporating the judicial-review bar in § 405(h) also effectively incorporates the exception "herein provided" in § 405(g).

*Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018) (citations omitted).  "The Supreme Court has held that § 405(g) imposes two distinct preconditions for obtaining judicial review of covered Medicare claims.  First, the plaintiff must have 'presented' the claim to the Secretary." *Id*. at 825 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)).  Presentment "demand[s] that the [Secretary] have 'an opportunity to rule on a concrete claim for reimbursement.'"  *RICU LLC v. U.S. Dep't of Health and Human Servs.*, 22 F.4th 1031, 1036 (D.C. Cir. 2022) (quoting *Heckler v. Ringer*, 466 U.S. 602, 622 (1984)).  "Second, the plaintiff must fully exhaust all available administrative remedies."  *Am. Hosp. Ass'n*, 895 F.3d at 826.  The first requirement cannot be waived, but the second one is waivable.  *Id.* at 825-26.  Thus, the court must consider whether the Hospitals have presented their claim to the Secretary and, if so, whether they have exhausted their administrative remedies.

The Hospitals argue that they have previously presented their claims and exhausted their administrative remedies, as demonstrated by the earlier *Allina* cases.  ECF No. 17, at 16.  Specifically, they contend that *Allina I* "followed Board appeals of untimely NPRs" and the claims were remanded in *Allina III*.  *Id.*; *see id.* at 17 (arguing that "[t]hough this case has been back and forth between the courts and the agency for multiple attempts at fixing procedural deficiencies, it reflects a single case extending back to the *Allina I* appeals").  In their view, the present challenge to the 2023 Rule is a "continuation of *Allina III*," such that they need not wait until they receive new NPRs, especially because the new NPRs will reflect the same DSH computations as the original ones at issue in *Allina I*.  *Id.* at 18-19.  The court understands the Hospitals' theory to be that the *Allina* cases constitute a single continuous case for purposes of presentment under the

Medicare statute and that throughout these cases they have challenged the inclusion of Part C beneficiaries in the DSH calculation.

Unsurprisingly, the Secretary takes a very different position. He argues that the 2023 Rule is wholly independent from the remand in *Allina III* and that "[t]he rule itself makes clear that individualized action must still be taken in appeals that have been judicially remanded to the agency, like those at issue here." ECF No. 19, at 3. Such individualized action could not have happened because the Hospitals filed before the 2023 Rule's effective date. *Id.* at 4 ("Plaintiffs have not obtained *any* sort of decision of the Board (final or otherwise) and did not even wait for the agency to apply the new 2023 Rule to their DSH adjustments."). The Secretary contends that this case is thus like *American Hospital Association*, where the D.C. Circuit held that it lacked subject-matter jurisdiction over a challenge to reimbursement rates where the plaintiffs had not yet submitted claims for reimbursement. ECF No. 15, at 15-16 (citing *Am. Hosp. Ass'n*, 895 F.3d at 826).

The court concludes that the Hospitals have not presented their claims related to the 2023 Rule to the Secretary. While the Hospitals previously presented their claims and exhausted their administrative remedies in the *Allina* cases as they related to *other* HHS actions, they did not submit claims for reimbursement under the 2023 Rule before bringing suit. It is of no moment that the Hospitals' "final payment actions for th[e relevant cost years] . . . were issued long ago reflecting the changed payment standard and . . . have not been vacated." ECF No. 17, at 16. The 2023 Rule mandates that further individualized action must still be taken, directing that the agency "will issue NPRs and revised NPRs, the DSH adjustments of which will be calculated pursuant to this [Rule]," and that "[p]roviders who remain dissatisfied after receiving NPRs and revised NPRs that reflect the interpretation adopted in this final action retain appeal rights and can challenge the

reasonableness of the Secretary's interpretation set forth in this final action." Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. at 37,785 (June 9, 2023); *id.* at 37,787.

The court is sympathetic that the Hospitals have been litigating the DSH computation for over a decade, but sympathy is not a basis for jurisdiction. Accordingly, because the Hospitals did not present a concrete claim for payment in the context of a specific payment dispute under the 2023 Rule, they fail to satisfy the presentment requirement and consequently this court lacks subject-matter jurisdiction under the Medicare statutes.[4]

### 2.   The court lacks federal-question jurisdiction

Alternatively, the Hospitals maintain that they need not satisfy the presentment and exhaustion requirements because their claim falls within an exception the Supreme Court carved out in *Illinois Council*, 529 U.S. 1 (2000). ECF No. 17, at 25-30. In *Illinois Council*, the Court recognized that a court could exercise federal-question jurisdiction where adherence to Section 405's presentment and exhaustion requirements "would not simply channel review through the agency, but would mean no review at all." 529 U.S. at 19. The Hospitals argue that this case fits into the exception because any forthcoming determinations under the 2023 Rule will not change their reimbursement amounts because the fractions will be calculated in the same manner as they previously have been and 42 C.F.R. § 405.1889(b)(1) limits appeals to matters that "are specifically revised in a revised determination." ECF No. 17, at 26 (quoting 42 C.F.R. § 405.1889(b)(1)); *see id*. (citing 42 C.F.R. § 405.1889(b)(2)). As the argument goes, because

---

[4] Because the Hospitals failed to present their claims, the court need not consider their arguments about exhaustion and futility. ECF No. 17, at 22-25; *see Am. Hosp. Ass'n*, 895 F.3d at 828.

their reimbursement amounts would not be revised, the Hospitals will be prohibited from appealing any Board determinations under the 2023 Rule.  *Id.* at 25-30.

The Hospitals' argument is belied by *Montefiore*, where the plaintiff hospital appealed its revised NPR based on the 2023 Rule to the Board, and the Board—relying in part on Section 405.1889(b)—determined that it had jurisdiction and permitted the hospital to seek expedited judicial review.  *See* Compl., *Montefiore*, 24-CV-1810 (D.D.C. June 24, 2024), ECF No. 1 ¶¶ 2, 67-68.  As *Montefiore* shows, and for the additional reasons that the Secretary explains, *see* ECF No. 19, at 15-20, Section 405.1889 will facilitate, rather than hinder, the Hospitals' ability to seek relief from the Board in the event they are dissatisfied with their DSH determinations under the 2023 Rule.

What is more, the 2023 Rule specifically directs that providers with "pending appeals reflecting fractions calculated in the absence of a valid rule will receive NPRs or revised NPRs reflecting DSH fractions calculated pursuant to this new final action and *will have appeal rights with respect to the treatment of Part C days in the calculation of the DSH fractions*."  88 Fed. Reg. 37,788 (June 9, 2023) (emphasis added).  Additionally, the rule provides that "[b]ecause NPRs and revised NPRs will reflect the application of a new DSH Part C days rule, CMS will have taken action under the new action, and the new or revised NPRs *will provide hospitals with a vehicle to appeal the new final action even if the Medicare fraction or DSH payment does not change numerically*."  *Id.* (emphasis added).  The Hospitals argue that the 2023 Rule cannot trump Section 405.1889(b)(1), ECF No. 17, at 29, but the two are entirely consistent in preserving the Hospital's right to appeal subsequent DSH determinations to the Board.

Because the Hospitals will be able to pursue their challenge to the 2023 Rule after they have properly presented their claims to the Secretary and exhausted their administrative remedies, the *Illinois Council* exception does not apply.

## IV.     Conclusion

For the foregoing reasons, the court will issue a contemporaneous order denying the Hospitals' motion for a stay, ECF No. 20, granting the Secretary's motion to dismiss, ECF No. 15, and denying as moot the Hospitals' motion to compel the administrative record, ECF No. 12.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: September 27, 2024